UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                                                                                            No. 20-CR-01438 MV

GARRET JARMER,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Garret Jarmer's objections to the United States Probation Office's Presentence Report, contained in Defendant's Sentencing Memorandum. Doc. 41. The government filed a response in opposition. Doc. 43. Probation also filed a response. Doc. 45. Mr. Jarmer subsequently filed a reply, withdrawing one of his two objections. Doc. 46. However, having considered the briefs, exhibits, relevant law, and being otherwise fully informed, the Court finds that both objections are well-taken and will be **GRANTED**.

## BACKGROUND

On February 16, 2021, Mr. Jarmer pled guilty to Count 1 of a one-count Indictment charging him with Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1), 924. Doc. 35. The United States Probation Office then prepared a Presentence Report, which it filed on April 26, 2021. Doc. 38. Mr. Jarmer objected to the Presentence Report on September 3, 2021 [Doc. 41], and the government responded on September 13, 2021 [Doc. 43]. Mr. Jarmer's sentencing hearing was held on December 14, 2021. Doc. 52.

Mr. Jarmer objects to the Presentence Report for two reasons. First, he objects to the four-level United States Sentencing Guidelines Section 2K2.1(b)(6)(B) enhancement, arguing that Mr.

1

Jarmer "did not possess a firearm in connection with another felony offense." Doc. 41 at 7. Second, he objects to the six-level United States Sentencing Guidelines Section 3A1.2(c)(1) enhancement, arguing that he did not create a substantial risk of serious bodily injury to a law enforcement officer when his "vehicle made contact with the police vehicle(s) after traveling a very short distance while still in the marked parking space." Doc. 46 at 3.

The government responds by arguing that Mr. Jarmer possessed a firearm in connection with two other felony offenses, and that he did, in fact, create a substantial risk of serious bodily injury when he reversed into a police vehicle. Doc. 43. Probation responds that it will not change the Presentence Report. Doc. 43.

## DISCUSSION

**1. Objection to Four-Level Section 2K2.1(b)(6)(B) Enhancement**

    **a. Legal Standard**

Section 2K2.1(b)(6)(B) provides for a four-level enhancement "[i]f the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). Thus, "[t]he 4-level enhancement has four distinct elements, and 'the United States must prove that the defendant: (i) used or possessed; (ii) any firearm or ammunition; (iii) in connection with; (iv) another felony offense.'" *United States v. Ortiz*, 457 F. Supp. 3d 1129, 1134 (D.N.M. 2020) (Browning, J.).

"[A]nother felony offense" means "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction

obtained." U.S.S.G. § 2K2.1 cmt. n.14(C); *see also United States v. Serna*, 405 F. Supp. 3d 1107, 1110 (D.N.M. 2019) (Browning, J.). This enhancement may be sustained based on "another felony offense" that was not charged or did not result in a conviction. *See United States v. Gambino-Zavala*, 539 F.3d 1221, 1230 n.3 (10th Cir. 2008). Additionally, the fact that "another felony offense" occurred need be proved only by a preponderance of the evidence. *See United States v. Magallanez*, 408 F.3d 672, 684–85 (10th Cir. 2005).

Application Note 14(A) to U.S.S.G. § 2K2.1 specifies that the use or possession of a firearm or ammunition is "in connection with" another felony offense if it "facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1 cmt. n.14(A). The Tenth Circuit has explained: "The plain and commonly understood meaning of 'facilitate' is to make easier." *United States v. Marrufo*, 661 F.3d 1204, 1207 (10th Cir. 2011).

      **b. Application**

The government has met its burden to prove three out of four distinct elements to sustain the Section 2K2.1(b)(6)(B) enhancement. *See Ortiz*, 457 F. Supp. 3d at 1134. First and second, the government has met its burden to prove that Mr. Jarmer "possessed" "any firearm or ammunition." *See id.*; Doc. 38 ¶ 9.

As to the third element, the government argues that "another felony offense" occurred when Mr. Jarmer reversed his vehicle into a police officer. Doc. 38 ¶ 7. However, the government has not met its burden to show that Mr. Jarmer committed Battery Upon a Peace Officer in New Mexico by a preponderance of the evidence. *See* N.M. Stat. Ann. § 30-22-24 (Battery Upon Peace Officer). Specifically, the government has failed to show by a preponderance of the evidence that Mr. Jarmer engaged in "intentional touching or application of force" when he made contact with a police vehicle. *Id.* In his reply, Mr. Jarmer argued that he was not "aware that the police vehicle

3

was behind him" when he reversed his car, but rather that the "police drove their vehicle into the path of Jarmer's vehicle and contact was made." Doc. 46 at 3. Thus, he argues that the government made "no showing of intent in this case." *Id.* At the sentencing hearing held on December 14, 2021, the Court invited the government to present additional evidence and argument on this objection. *See* Doc. 53 (transcript available by request). The Court also indicated its willingness to continue the hearing, if necessary, to allow the government to prepare to present additional evidence. *Id.* However, the government chose to proceed without putting on additional evidence. *Id.* Moreover, even after defense counsel reiterated the argument that Mr. Jarmer's contact with the police vehicle was unintentional, the government did not address this claim or request an opportunity to put on additional evidence to counter this claim. *Id.* Thus, the Court has no choice but to find that the government failed to meet its burden to show that Mr. Jarmer intentionally touched or applied force to the police vehicle, and therefore, the government failed to meet its burden to establish that Mr. Jarmer committed Battery Upon a Peace Officer. *See* N.M. Stat. Ann. § 30-22-24.

Assuming *arguendo* that Mr. Jarmer intentionally touched or applied force to the police vehicle, the government has still failed to meet its burden to establish that Mr. Jarmer committed Battery Upon a Peace Officer. "For a conviction under this charge, battery must result in actual injury to the officer, represent a threat to the officer's safety, or present a meaningful challenge to the officer's authority." *United States v. Little*, 829 F.3d 1177, 1186 (10th Cir. 2016); *see also State v. Cooper*, 2000-NMCA-041, ¶ 11 (N.M. Ct. App. 2000) ("[B]attery is not judged in a vacuum. It must be viewed in light of the factual setting to determine whether an actual threat to safety or a meaningful challenge to authority occurred."). Yet as discussed further *infra*, Mr. Jarmer did not create a substantial risk of serious bodily injury when his vehicle reversed into the

police vehicle. *See infra*; *see also* Doc. 38 ¶ 7; Doc 46-1 at 2, 4, 6, 8. The evidence shows that Mr. Jarmer backed his Hyundai Elantra into a police vehicle as he was leaving the space where his vehicle had been parked; he travelled a small amount of distance, remaining in the boundary of the parking space when he made contact with the police vehicle. Doc. 38 ¶ 7; Doc. 46 at 2; Doc. 46-1 at 2, 4, 6, 8. Photographs do not show any damage to either car. Doc. 46-1 at 2, 4, 6, 8. Thus, Mr. Jarmer's contact with a police vehicle did not "result in actual injury to the officer [or] represent a threat to the officer's safety." *Little*, 829 F.3d at 1186.

Likewise, Mr. Jarmer's conduct did not "present a meaningful challenge to the officer's authority." *Id.* New Mexico courts have declined "to define the legal boundaries of a 'meaningful challenge' to authority." *State v. Jones*, 2000-NMCA-047, ¶ 13 (N.M. Ct. App. 2000). However, a meaningful challenge to authority is "above and beyond the 'mere affronts to personal dignity' that are actionable under tort law," in order to avoid the "absurd result" of criminalizing "even a mundane civil battery, such as rudely grabbing a ticket from an officer's hands." *Id.* ¶ 6. Hence, "[t]he term 'meaningful' provides a means to prevent treating petty conduct that could be interpreted as an incidental challenge to authority as though it were a strict liability felony." *Id.* ¶ 14. Generally, a meaningful challenge to authority requires a particular context or pattern of conduct, rather than an isolated action. *See id.* ¶ 10 (finding a meaningful challenge to authority where defendant squirted baby oil on a corrections officer attempting to subdue an inmate in the midst of a jail that "had already become unruly to the point of rebellion"); *State v. Martinez*, 2002-NMCA-036, ¶ 39 (N.M. Ct. App. 2002) (finding a meaningful challenge to authority where defendant repeatedly resisted corrections officer, kicked officer, and spit in officer's face); *State v. Cooper*, 2000-NMCA-041, ¶ 13 (N.M. Ct. App. 2000) (finding a meaningful challenge to authority where defendant repeatedly resisted police officer's orders and slapped officer's hand).

5

Here, Mr. Jarmer had no contact with police officers before reversing his car and making contact with a police vehicle. Doc. 38 ¶ 7. Thus, he did not engage in a pattern of conduct that meaningfully challenged the authority of police officers before coming into contact with the police vehicle. *See Martinez*, 2002-NMCA-036, ¶ 39; *Cooper*, 2000-NMCA-041, ¶ 13. Photos show no dents in either car after the incident. Doc. 46-1 at 4, 6, 8. Thus, his contact with the police vehicle was not as offensive as actions like spitting or slapping an officer. *See Martinez*, 2002-NMCA-036, ¶ 39; *Cooper*, 2000-NMCA-041, ¶ 13. Finally, the government has provided no evidence that the parking lot in which this incident took place was occupied by anyone other than Mr. Jarmer, a female companion, and police officers. Doc. 38 ¶ 7. Thus, Mr. Jarmer's conduct did not occur in a particular context that "exacerbated a serious situation . . . [that] created unnecessary danger for or jeopardized the authority of the . . . officers." *Jones*, 2000-NMCA-047, ¶ 10. Accordingly, the government has failed to meet its burden to show that Mr. Jarmer's conduct rose above a mundane civil battery to the level of Battery Upon a Peace Officer.

In the alternative, the government argues that "another felony offense" occurred because Mr. Jarmer was in receipt of a vehicle that he should have known was stolen. Doc. 38 ¶ 10. The government has met its burden by making this argument. *See* N.M. Stat. Ann. § 30-16D-4 (Receiving or Transferring Stolen Vehicles or Motor Vehicles). Given Mr. Jarmer's admission that the ignition of the car he had recently purchased was "messed up," and in light of his multiple arrests and convictions for vehicle theft-related offenses, the government has shown by a preponderance of the evidence that Mr. Jarmer knew or had reason to believe that the car was stolen or unlawfully taken at the time he purchased the vehicle. *Id.*; Doc. 38 ¶¶ 10, 27–53. Thus, the government has shown by a preponderance of the evidence that another felony offense occurred.

Despite showing that another felony offense occurred—Receiving or Transferring Stolen Vehicles—the government cannot show that Mr. Jarmer possessed a firearm *in connection with* that offense. *See* U.S.S.G. § 2K2.1(b)(6)(B). The government argues that Mr. Jarmer's possession of a firearm facilitated or had the potential to facilitate another felony offense because it "emboldened" him. Doc. 43 at 3–5. The government relies on a line of cases finding that "physical proximity could establish a nexus between a handgun and a drug trafficking offense" because "[h]andguns are widely recognized as a tool of the drug dealers' trade." *Serna*, 405 F. Supp. 3d at 1110 (citing *United States v. Bunner*, 134 F.3d 1000, 1006 (10th Cir. 1998)). Possession of a firearm could give a defendant "a sense of security emboldening him to venture from his home with drugs that someone might wish to take from him by force." *United States v. Justice,* 679 F.3d 1251, 1255 (10th Cir. 2012). As such, firearms are likely to facilitate or have the potential to facilitate felony drug trafficking or possession offenses. *Id.* at 1114. Yet Mr. Jarmer is not accused of a drug offense, and firearms have no special connection to either of the alleged felony offenses. As such, this line of cases is inapposite. To prove that Mr. Jarmer possessed a firearm and ammunition *in connection with* another felony offense, the government must establish more than mere physical proximity. It is not enough that the firearm was inside the stolen vehicle or was in Mr. Jarmer's possession when he struck the police vehicle. *See, e.g.*, *United States v. Lopez*, No. 14-CR-2207 JP, 2015 WL 5090699, at *3 (D.N.M. June 18, 2015) ("[T]he Court will not impose a four-level enhancement under Section 2K2.1(b)(6)(B) based on the mere fact that Defendant was found in possession of a stolen vehicle at the time of his arrest.").

First, the government has failed to meet its burden to show that the possession of a firearm facilitated or made easier Mr. Jarmer's receipt of a stolen vehicle. *See Marrufo*, 661 F.3d 1204, 1207; U.S.S.G. § 2K2.1 cmt. n.14(A). Given Mr. Jarmer's post-arrest statement that he purchased

the vehicle from another person, there is no reason to believe that a firearm facilitated this transaction. *See* Doc. 38 ¶ 9. Indeed, the government makes no showing that Mr. Jarmer even possessed a firearm at the time he purchased the vehicle. Even assuming that Mr. Jarmer was perfectly aware that the vehicle he purchased from another person was stolen, this alone cannot support an inference that his firearm facilitated the financial transaction because there is no evidence that it was a dangerous situation in which a firearm would be beneficial. *Cf. Ortiz*, 457 F. Supp. 3d at 1142 (finding an insufficient connection between the defendant's firearm possession and threatening telephone calls, because even though he threatened to use a firearm while making the calls, telephone calls alone "[do] not thrust a defendant into dangerous situations" in which a firearm would be or could be used). Additionally, despite his numerous arrests and convictions for vehicle-related theft offenses, Mr. Jarmer's criminal history does not indicate that he has ever used a firearm in connection with such an offense. *See United States v. Hoyle*, 751 F.3d 1167, 1167 (10th Cir. 2014) (considering a defendant's criminal history when evaluating the applicability of the Section 2K2.1(b)(6)(B) enhancement); Doc. 38 ¶¶ 27–53. As such, the government has made no showing that a firearm is a so-called tool of the trade for vehicle-related theft offenses in Mr. Jarmer's case. *See Serna*, 405 F. Supp. 3d at 1110. This also weighs against the Section 2K2.1(b)(6)(B) enhancement. Finally, given that Receiving or Transferring Stolen Vehicles has an intent and knowledge requirement that hinges on a defendant's knowledge at the time that they receive or transfer a stolen vehicle, the government's argument that a firearm emboldened Mr. Jarmer to subsequently drive the stolen vehicle around town is irrelevant. *See* N.M. Stat. Ann. § 30-16D-4 ("Receiving or transferring a stolen vehicle or motor vehicle consists of a person who, *with intent to procure or pass title to a vehicle or motor vehicle . . . that the person knows or has reason to believe has been stolen or unlawfully taken*, receives or transfers possession of the

8

vehicle or motor vehicle from or to another . . . .") (emphasis added).[1] More likely, his possession of a firearm was subsequent to and unrelated to his possession of the vehicle. *See Justice*, 679 F.3d at 1256 (finding the Section 2K2.1(b)(6)(B) enhancement inapplicable because "the acquisition of the gun was subsequent to and unrelated to the drug possession").

Additionally, assuming *arguendo* that Mr. Jarmer did commit Battery Upon a Police Officer, the government failed to meet its burden to show that the possession of a firearm facilitated or made easier Mr. Jarmer's contact with the police vehicle. *See Marrufo*, 661 F.3d 1204, 1207; U.S.S.G. § 2K2.1 cmt. n.14(A). Given Mr. Jarmer's decision to abandon the firearm and flee the scene immediately after making contact with the police vehicle, there is no reason to believe that the firearm had emboldened him just moments before. *See Perry*, 727 F. App'x at 542. Nor is it logical to conclude that the firearm facilitated the alleged battery, given that the government alleges that Mr. Jarmer used his vehicle—rather than the firearm—as a weapon. Doc. 43 at 3–5. Thus, the Court finds that Mr. Jarmer's firearm possession did not facilitate or make easier Mr. Jarmer's contact with a police vehicle.

---

[1] Note that "Receiving or transferring a stolen vehicle or motor vehicle" may also consist of a person "who has in the person's possession any vehicle that the person knows or has reason to believe has been stolen or unlawfully taken." N.M. Stat. Ann. § 30-16D-4. Yet because Mr. Jarmer indicated that he purchased the vehicle from another person, and the government has offered no evidence to the contrary, this Court finds that the first definition of receiving or transferring a vehicle—which relates to transfer of vehicle's title, rather than mere possession of a vehicle—is most applicable to Mr. Jarmer. *Id.*; Doc. 38 ¶ 10. Even assuming *arguendo* that Mr. Jarmer only possessed the vehicle, the Court finds the government's arguments that a firearm facilitated his possession of the vehicle unavailing. Driving a stolen car is not inherently violent and does not necessarily "thrust a defendant into dangerous situations." *Ortiz*, 457 F. Supp. 3d at 1142. Given the fungibility of vehicles, it is unlikely that anyone, even the previous legal owner of the vehicle, would have easily identified the stolen vehicle on the road. Likewise, the government has provided no evidence that the previous legal owner would have posed such a threat to Mr. Jarmer that a firearm was necessary to facilitate his continued possession of the car. Thus, the government has failed to prove by a preponderance of the evidence that Mr. Jarmer possessed a firearm in connection with his possession of a stolen vehicle. *See* U.S.S.G. § 2K2.1(b)(6)(B).

Finally, there is no evidence that Mr. Jarmer's firearm possession facilitated the commission of a felony while he was attempting to flee the police. Unlike in *United States v. Perry*, where a defendant reached for a loaded firearm while attempting to flee police, Mr. Jarmer actively distanced himself from his firearm. 727 F. App'x 539, 542 (10th Cir. 2018); Doc. 38 ¶ 8. In *Perry*, the Tenth Circuit found that "the firearm's presence in the car wasn't coincidental" because the defendant reached for it—demonstrating a willingness to use the firearm to facilitate his escape. *Perry*, 727 F. App'x at 542. Specifically, the Tenth Circuit found that "it had the potential to facilitate the crime of endangering others while eluding a police officer." *Id.* Here, however, Mr. Jarmer did exactly the opposite by leaving the firearm in the car to flee on foot. Doc. 38 ¶ 8. Thus, this too weighs against the Section 2K2.1(b)(6)(B) enhancement.

In sum, the Court finds by a preponderance of the evidence that Mr. Jarmer's possession of a firearm did not facilitate or have the potential to facilitate another felony offense. As such, it is inappropriate to apply the four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B). Thus, Mr. Jarmer's objection to the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) is hereby granted.

**2. Objection to Six-Level Section 3A1.2(c)(1) Enhancement**

    **a. Legal Standard**

Section 3A1.2(c)(1) increases a defendant's base-offense level "[i]f, in a manner creating a substantial risk of serious bodily injury, the defendant . . . knowing or having reasonable cause to believe that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom[.]" U.S.S.G. § 3A1.2(c)(1). "Subsection (c) applies in circumstances tantamount to aggravated assault . . . . [I]ts applicability is limited to assaultive conduct against such official victims that is sufficiently serious to create at least a 'substantial risk

of serious bodily injury.'" *Id.* cmt. n.4(A). A "'[s]ubstantial risk of serious bodily injury' includes any more serious injury that was risked, as well as actual serious bodily injury (or more serious injury) if it occurs." *Id.* cmt. n.4(B). A "serious bodily injury" involves "extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or require[es] medical intervention such as surgery, hospitalization, or physical rehabilitation." § 1B1.1, cmt. n.1(M).

b. **Application**

Mr. Jarmer argues that he did not create a substantial risk of serious bodily injury to a law enforcement officer when his "vehicle made contact with the police vehicle(s) after traveling a very short distance while still in the marked parking space." Doc. 46 at 3; *see also* Doc 46-1. Mr. Jarmer argues that he made "contact with a police vehicle after driving at a low rate of speed with no apparent damages to either vehicle and no injuries suffered by anyone involved." Doc. 46 at 3. The government argues that Mr. Jarmer created a substantial risk of bodily harm to the officers involved in apprehending him, arguing that Mr. Jarmer "drove at and struck an occupied police unit." Doc. 43 at 5. The Presentence Report states that Mr. Jarmer "reversed the vehicle into a [New Mexico State Police] truck." Doc. 38 ¶ 7. Finally, a photo of Mr. Jarmer's vehicle after it came to rest shows that it was still within the parking spot, mere inches from the curb. Doc. 46-1 at 2. Additional photos of the vehicle showing where it was in contact with the police vehicle do not appear to show any dents in either vehicle. Doc. 46-1 at 4, 6, 8. No party has suggested that either vehicle was damaged or that any injuries were reported. Doc. 46 at 2.

Examples of assaults that created a substantial risk of serious bodily injury include rough and disorderly struggles at close quarters, assaults where a defendant punched a police officer in the head, and assaults where a defendant kicked, elbowed, punched, and swung his arms in a

frenzied attempt to avoid arrest. *See United States v. Curtis*, 799 F. App'x 639, 642 (10th Cir. 2020) (citing *United States v. Alexander*, 712 F.3d 955, 978-79 (7th Cir. 2013); *United States v. Ashley*, 141 F.3d 63, 69 (2d Cir. 1988)).  However, courts have been more wary of categorizing contact between vehicles as amounting to serious bodily injury.  For example, in *United States v. Stanley*, the Eleventh Circuit found that there was "just barely" enough evidence that a defendant had created a substantial risk of serious bodily injury when officers rammed his car to cause it to stop during a high-speed car chase. 24 F.3d 1314, 1322 (11th Cir. 1994).

Here, the evidence does not indicate that Mr. Jarmer created a substantial risk of serious bodily injury when his vehicle reversed into the police vehicle.  There is simply insufficient evidence that a Hyundai Elantra could have reached the speed necessary to create a substantial risk of serious bodily injury in the few inches that it traveled before making contact with the police vehicle.  Given that photos show the vehicles are undented, and there is no other evidence to indicate that Mr. Jarmer created a substantial risk to law enforcement officers with the car, the Court finds that Mr. Jarmer did not create a substantial risk of serious bodily injury to law enforcement officers.  Doc. 38 ¶ 7; Doc. 46 at 2; Doc. 46-1 at 2, 4, 6, 8.

Probation also argues that Mr. Jarmer created a substantial risk of serious bodily injury based on his possession of a firearm.  Doc. 47 at 2.  Neither Mr. Jarmer nor the government address this argument.  Hence, the Court must determine whether Mr. Jarmer's possession of a firearm created a substantial risk to law enforcement.  Courts generally find that defendants created a substantial risk of serious bodily injury where they reached for, brandished, or discharged a firearm. *See, e.g.*, *United States v. Robertson*, 946 F.3d 1168, 1172 (10th Cir. 2020), *cert. denied*, 141 S. Ct. 398 (2020) (brandished firearm); *United States v. Gonzales*, 931 F.3d 1219, 1221 (10th Cir. 2019) (reached for firearm); *United States v. Ford*, 613 F.3d 1263, 1269 (10th Cir. 2010)

(discharged firearm).² *Cf. United States v. Fillman*, 325 F. App'x 700, 708 (10th Cir. 2009) (affirming Section 3A1.2(c)(1) applicability where defendant brandished large hunting knife).

Here, Mr. Jarmer did none of those things. In the Presentence Report, Probation states that Mr. Jarmer discarded his firearm as he exited his vehicle before fleeing on foot. Doc. 38 ¶¶ 8, 11. Although his possession of the firearm was illegal and his attempt to flee was ill-advised, his choice to discard the firearm is significant. Rather than make the encounter more dangerous for everyone involved, Mr. Jarmer obviated the risk of substantial harm to law enforcement. Accordingly, Mr. Jarmer's objection to the six-level enhancement under U.S.S.G. § 3A1.2(c)(1) is hereby granted.

## CONCLUSION

For the foregoing reasons, Mr. Jarmer's objections to the Presentence Report, contained in Defendant's Sentencing Memorandum, [Doc. 41], are hereby **GRANTED**.

**IT IS HEREBY ORDERED** that Mr. Jarmer's offense level is 12, his Criminal History Category is VI, and the U.S. Sentencing Guidelines sentencing range is therefore 30 to 37 months.

ENTERED this 15th day of December 2021.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

---

² It is acceptable to charge a defendant with felon in possession of a firearm and then apply a six-level enhancement under Section 3A1.2, in connection with this firearm possession. *See, e.g.*, *United States v. Gonzales*, 931 F.3d 1219, 1220 (10th Cir. 2019).